PETER G. WILSON, Respondent, v. THE WABASH, ST.
LOUIS & PACIFIC RAILWAY COMPANY,
Appellant.

Kansas City Court of Appeals, June 28, 1886.

1.  CONTRACT OF SHIPMENT—CAR DESIGNATED BY COMPANY—MISTAKE—
CASE ADJUDGED.—Where, as in this case, the plaintiff took the
specific car designated by defendant's agent, the matter of the *num-
ber* of the car concerned the carrier alone. This is not affected by
the fact that the contract of shipment was reduced to writing, and
a car designated in it different from the one so designated by said
agent. The contract was to carry the freight, and the number of
the car on the margin was nothing more than the *memorandum* of
defendant for its assistance and convenience.

2.  —— CLAUSE AS TO NOTICE. NOT APPLICABLE—CASE ADJUDGED.
In view of the facts of this case, the clause as to *notice* of claim is
not applicable. It provides that no claim shall be paid, etc., unless
a claim for such loss shall be made in writing, etc., within five days
"from the time said stock is removed from said car." The five
days, within which notice is to be given, only begin to run from
the time the hogs were removed from the car. Neither plaintiff,
nor his consignee had an opportunity to remove the hogs from the
car, and the complaint is that they were *not delivered* to the con-
signee by defendant, as it had contracted to do. Certainly the
notice would not apply until the defendant, who made the mistake
and the wrong delivery, has notified the shipper, or his consignee,
of the fact, and that the hogs had been removed from the car.

APPEAL from Carroll Circuit Court, HON. JAMES M.
DAVIS, Judge.

*Affirmed.*

Statement of case by the court.

This is an action to recover damages for failure of
defendant, a railroad corporation, to carry hogs of the
plaintiff according to contract. The petition charged
that the defendant, in March, 1882, agreed with plaintiff
to ship a car load of hogs for him from Norborne, Car-
roll county, to East St. Louis, over its road, consigned to

plaintiff's agent at said destination. That defendant failed to so do, but instead, delivered to plaintiff's said agent another car load of hogs of an inferior quality, and of less value by two hundred dollars, all of which facts were unknown to plaintiff until after said hogs had been sold and disposed of.

The answer pleaded specially, after tendering the general issue as to other matters, a special contract of shipment, sufficiently noted in the opinion hereafter, which provided that plaintiff should look after loading and unloading his hogs in the car, and have the care of them while in transit, and stipulating that in case of damage growing out of the contract, plaintiff should give to defendant a written notice, sworn to, of the claim for damage or loss within five days after the hogs were removed from the car. It alleged that the fault, if any, in loading the hogs into the wrong car was that of the plaintiff, and that he had failed to deliver to defendant the required notice within the five days.

The reply admitted that plaintiff had not given the notice within five days, and alleged that he did not have notice until after the time had elapsed of the mistake made by defendant, and as soon as the mistake was discovered plaintiff's said agent at St. Louis made demand of payment, and defendant promised to settle the same without objection to the time or manner of demand.

Plaintiff's evidence tended to show that he applied to defendant's station agent at Norborne for a car in which to ship sixty-five head of fat hogs to East St. Louis; that about dark, or a little after, the agent pointed out to him a car standing on its track at said station, and told him to load his hogs into it. Another party, Findley & McQuiston, were shipping hogs at the same time from this station. There were five cars on the track. McQuiston & Co. loaded in the front four cars, and the car in which the agent directed the plaintiff to load was the rearmost car. That plaintiff did load his hogs into the car so designated by the agent, and the hogs so left the

station, and were carried off in said car. The plaintiff saw, or his servants saw, no number on the car. After completing the loading, the agent presented to plaintiff, or his agent, a contract of shipment to sign, which he did.

The consignment and bill of lading were made out to Metcalfe, Moore & Co., of St. Louis. More than five days thereafter, on receipt of returns from the consignee, the plaintiff discovered, from the lack of correspondence with the number of hogs he had shipped, and from the amount of sale, that there must be some mistake about the matter. He went to St. Louis, and on investigation became satisfied that his car load of hogs had not been properly consigned, and had not been received by his commission merchants. His evidence tended to show that the hogs sent by defendant to his merchant were part of those shipped by Finley & McQuiston. Failing to get any satisfaction from Findley & Co., or to obtain settlement from defendant, this action was brought. Defendant's evidence tended to show that the car pointed out by the agent at Norborne to plaintiff in which to ship was car nubered 3108, and it was the same car in which plaintiff loaded his hogs, and that this car went through to St. Louis without any change, and was duly delivered to Metcalfe, Moore & Co. That plaintiff loaded the hogs himself, or by his servants.

The plaintiff asked no instructions. The court gave quite a number, requested by defendant, and refused others. The court (sitting as a jury) found for plaintiff, and entered up judgment for two hundred dollars against defendant, from which defendant prosecutes this appeal.

GEO. S. GROVER, for the appellant.

I. The defendant was entitled to a judgment upon the pleadings. Rev. Stat., sects. 3524, 3525 ; *Ennis v. Hogan*, 47 Mo. 513.

II. The plaintiff was not entitled to recover in this action, as the mistake in loading the hogs was a risk,

which, by the terms of the contract, he expressly assumed. *Atchison v. Railroad*, 80 Mo. 213 ; *Newby v. Railroad*, 19 Mo. App: 391.

III. The instructions asked by defendant on the question of *notice* correctly declared the law, and it was error to refuse them. *Dawson v. Railroad*, 76 Mo. 514; *Brown v. Railroad*, 18 Mo. App. 568.

IV. The tenth instruction, asked by defendant, should have been given. Authorities cited, *supra.*

SEBREE and HALE & SONS, for the respondent.

I. The answer contained *new matter*, and plaintiff filed a reply thereto. Defendant was not entitled to judgment on the pleadings. Rev. Stat., sect. 3524; *Mortland v. Hatton*, 44 Mo. 58; *Nichols v. Looken*, 79 Mo. 272.

II. The risk of loading was not comprehended in the contract in this case, and *Atchison v. Railroad* (80 Mo. 213), has no application to this case. So the other authorities cited are in plaintiff's favor.

III. The claim as *notice* of loss is not applicable here. There is no evidence that these hogs were ever unloaded to plaintiff's consignees. Plaintiff was not aware of his loss until after five days. The *negligence* of defendant made it impossible to give the five days' notice.

IV. The instructions of defendant were properly refused, because ignoring the right to recover for *negligence independent* of the contract, and of *waiver* of, and excuses for notice of, claim.

V. The tenth instruction was on the basis of transporting the hogs in a certain car, whereas the evidence was (and the court so found), that defendant agreed to transport the hogs in another and different car. It, with the others, ignored the question of negligence.

VI. The finding of the facts by the court has all the conclusiveness of a verdict by the jury.

PHILIPS, P. J.—It is difficult to escape the conclu-

sion, from all the facts and circumstances in evidence,. that the misfortune to plaintiff in this transaction grew out of the mistake of defendant's agent at Norborne in billing the wrong car to Metcalf, Moore & Co. The agent pointed out the car to the shipper and directed him to load his hogs into it. This was done under circumstances to leave no reasonable ground to question the fact, as there is no pretext for saying there was any change of the hogs from one car to another after they were loaded. They all agreed in the fact that the car so pointed out to plaintiff was the rearmost car on the track, and the plaintiff loaded his hogs into it. They were sixty-five in num-, ber, and of such a grade as to be easily distinguished from the other hogs shipped at the same time from the station. It was about, or a little after, dark when the car was loaded. Plaintiff very naturally gave no heed to the number. He had nothing to do with the numbering. of the car. He took the specific car designated by defendant's agent. The matter of the number concerned the carrier alone. It enabled it to keep its account of the car, so as to trace it, and to guide in the delivery of the freight, and to enable its agents at the point of delivery to identify it.

I. Defendant presented his case in the refused instructions, and in argument at this hearing, upon the assumption that the contract of shipment, having been reduced to writing, and the car furnished by it being designated in the written instrument, it can only be bound by the letter of the written compact, which only required it to deliver that particular car.

The contract, in our opinion, is not so limited. Its stipulation is, "that the party of the first part (the defendant) will * * * forward for the party of the second part (the plaintiff), * * * men and the following freight, to-wit: 1 car hogs (65) from Norborne to U. depot," etc. From which it is plain that defendant's undertaking was to carry sixty-five hogs for plaintiff from Norborne, to the Union depot in St. Louis. Nothing is said in the

contract about the number of the car.   On the margin of
the contract there is this memorandum:   "No. of car
3108."   This, as already suggested, was nothing more
than the memorandum of defendant for its assistance
and convenience.

It would not be contended, I apprehend, by the
learned counsel for appellant, that, notwithstanding this
marginal note, the defendant could not have shipped the
hogs in any other car, and that plaintiff could have ·
claimed damages unless for other cause than the mere
change of car designated on the margin of the contract.

In view of the instructions conceded by the court to
defendant, it had the full benefit of the issue of fact as
to whether car number 3108 was the one pointed out by
its agent to plaintiff.   By their verdict the jury found
that the agent was mistaken, and the verdict is well sup-
ported by the evidence.

II.   The loss resulting to plaintiff was, therefore,
directly traceable and attributable to the act of negligence
of defendant's agent, for which it must respond in dam-
ages, unless relieved therefrom by some other controlling
provision of the contract.   To this end defendant relies
upon the clause respecting the notice to be given in five
days.   We are of opinion that this provision is inappli-
cable to the facts of this case.   This provision is, that
no claim for damage which may accrue to the plaintiff
under the contract shall be paid, etc., unless a claim for
such loss or damage shall be made in writing, etc., within
five days "from the time said stock is *removed from said
care*"

Waiving any discussion of the question, as to the
right of defendant to insist upon this provision, even if
applicable to the case, where it knew, from the bill of
lading, that plaintiff was shipping to commission mer-
chants in St. Louis, who would be governed in receiving
the hogs by the bill of lading, and that plaintiff, in the
usual course of such transactions, would not know of the
miscarriage until the lapse of the five days after ·the

arrival of the hogs, it is enough to say, that the contract invoked by defendant only provides that the five days within which notice is to be given, shall begin to run from the time the hogs were removed from the car. Neither the plaintiff, nor his consignee, had an opportunity to remove the hogs from the car. Complaint is that they were not delivered. Plaintiff never did remove them from the car, and the record furnished us by appellant does not show when plaintiff's hogs were so removed.

The case, in principle, is the same as if the defendant had carried plaintiff's hogs to New York. The five days' notice could not apply to such a case. Especially must this be so, until the defendant, who made the mistake and the wrong delivery, has notified the shipper, or his consignee, of the fact, and that the hogs had been removed from the car.

Seeking, as the defendant does, to escape his common law liability, by invoking the strict letter of its special contract, it must be held both to its spirit and letter.

The other judges concurring, the judgment of the circuit court is affirmed.